IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:20-cv-00496-M

BLUE CORAL, LLC; ENC MASSAGE
AND FACIAL STORE #1, LLC; ENC
MASSAGE AND FACIAL STORE #2,
LLC; ECNR MASSAGE AND FACIAL
STORE #3, LLC; ECNR MASSAGE AND
FACIAL STORE #4, LLC; ECNR
MASSAGE AND FACIAL STORE #5,
LLC; ECNR MASSAGE AND FACIAL
STORE #6, LLC; and ECNR MASSAGE
AND FACIAL STORE #7, LLC,

Plaintiffs,

v.

WEST BEND MUTUAL INSURANCE
COMPANY,

Defendant.

**OPINION
AND ORDER**

This matter comes before the court on Defendant's motion to dismiss the complaint, filed October 20, 2020. [DE-8] For the reasons that follow, Defendant's motion is GRANTED.

**I.    Background**

The complaint alleges as follows: Plaintiffs are North Carolina-based franchises of Hand and Stone Massage and Facial Spa, a chain of spas and massage parlors. [DE-1-3 ¶ 6] Each Plaintiff[1] was insured by Defendant, a Wisconsin-based insurance company, under policies insuring against, *inter alia*:

---

[1] Plaintiffs agreed to voluntarily dismiss Plaintiff ECNR Massage and Facial Store #6 from this litigation in response to Defendant's motion to dismiss. [DE-22]

1

> [A]ctual loss of Business Income or Extra expense . . . sustain[ed] as the result of . . . "operations" being temporarily shut down or suspended . . . by a . . . government board that has jurisdiction over [the] "operations" . . . due to an outbreak of a "communicable disease" . . . at the insured premises[.]

[DE-1-3 ¶¶ 1, 7, 19]

Plaintiffs' policies were in place on March 23, 2020, when North Carolina Governor Roy Cooper issued Executive Order 120 ("EO 120") in response to the advent of the COVID-19 pandemic.[2] [*see* DE-1-3 Exhibit B[3]]  EO 120 was issued with the stated intent, among other things:

> [T]o protect the health and safety of the residents of North Carolina, slow the spread of the COVID-19 pandemic, reduce the number of people infected, avoid strain on our healthcare system, and to address adverse economic impacts that will lead to additional human suffering upon individuals adversely impacted by the COVID-19 pandemic[.]

[DE-1-3 Exhibit B at 2]  To further such goals, EO 120 ordered that certain businesses shut down indefinitely, including: (1) certain "Spas[,]" because they are entertainment facilities at which "mass gatherings" were relatively likely to occur; and (2) "Massage Parlors[,]" because they are "personal care and grooming businesses" where "the ability to practice the social distancing necessary to reasonably protect against COVID-19 is significantly reduced" because "individuals are in close proximity for

---

[2] The court takes judicial notice of the fact that coronavirus disease, or COVID-19, is a disease caused by severe acute respiratory syndrome coronavirus 2, or SARS-CoV-2, which as of the date of this opinion has spread to virtually every area within the United States, causing widespread damage to the economy, millions of infections, and hundreds of thousands of deaths. *See generally* COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/ (last visited April 1, 2021); Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[3] Without converting a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to a Federal Rule of Civil Procedure 56 motion for summary judgment, the court may consider extrinsic evidence (1) attached by a plaintiff to the complaint or (2) attached by a defendant to a motion to dismiss when the document is "integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (internal quotation marks, brackets, and citations omitted).

extended periods of time, or service personnel are in direct contact with clients[.]" [DE-1-3 Exhibit B §§ 1(b)–(c) ("Mass Gathering[s]")] Notably, EO 120 did not mention any specific case of COVID-19 as having taken place at any specific place, but stated that "the area subject to the COVID-19 emergency is statewide[.]" [DE-1-3 Exhibit B at 2]

Plaintiffs shut down their businesses in compliance with EO 120, and the businesses remained closed until May 22, 2020, when they were allowed to reopen with certain restrictions.[4] [DE-1-3 ¶¶ 8–16] Plaintiffs thereafter filed claims with Defendant for their lost income, but the claims were denied. [DE-1-3 ¶¶ 17–20]

Plaintiffs filed their complaint in Wake County, North Carolina Superior Court on August 7, 2020, bringing claims against Defendant for breach of the insurance policies and seeking a declaratory judgment that their losses caused by EO 120 were covered by their policies. [DE-1-3 ¶¶ 23–49] Defendant removed the litigation to this court on September 22, 2020, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. [DE-1] On October 20, 2020, Defendant moved the court to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). [DE-8]

Defendant's motion has been fully briefed by the parties and is ripe for adjudication.

## II.     Legal standard

Federal Rule of Civil Procedure 8 ("Rule 8") requires a pleading to contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A defendant against whom a claim has been brought can challenge the claim's sufficiency under Rule 8 by

---

[4] Plaintiffs allege that other Executive Orders extended and then terminated EO 120's directive that Plaintiffs' businesses remain closed. [*see* DE-1-3 ¶¶ 8–14] Where the court refers to EO 120 within this opinion, the court also refers to any Executive Order that Plaintiffs allege modified EO 120's directive.

3

moving the court to dismiss the claim pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). To survive a Rule 12(b)(6) motion, a plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

### III. Analysis

Because Plaintiffs' declaratory-judgment claim seeks a declaration by the court that Plaintiffs' "business losses suffered during the COVID-19 shutdown are covered events under their policies with

4

Defendant, and [that] Defendant wrongfully denied their claims" [DE-1-3 ¶ 34], the declaratory-judgment claim essentially asks the court to declare that Defendant has breached the insurance policies. Plaintiffs' two claims therefore overlap entirely, and the question is whether Plaintiffs have plausibly alleged a breach of the policies.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).[5] Defendant does not dispute that it had valid insurance policies with Plaintiffs in place at all relevant times, with the exception of Plaintiff ECNR Massage and Facial Store #6, who Plaintiffs subsequently voluntarily dismissed from this litigation pursuant to Federal Rule of Civil Procedure 41(a). [*see* DE-9 at 2, 15–16; DE-22] However, Defendant challenges the complaint as failing to plausibly allege that Defendant breached the terms of those policies. [DE-9 at 8–15]

The complaint invokes only one term of the insurance policies as obliging Defendant to pay Plaintiffs' insurance claims: the Communicable Disease Business Income and Extra Expense Coverage provision (the "Communicable Disease Provision"), quoted below. [DE-1-3 ¶ 19] Plaintiffs allege that: (1) EO 120 was an event implicating the Communicable Disease Provision; (2) Plaintiffs' losses resulting from their compliance with EO 120 were covered losses under the Communicable Disease Provision which

---

[5] Under the *Erie* doctrine, a federal court sitting in diversity applies (1) the substantive law of the state in which it sits and (2) federal procedural law. *See Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). The parties agree that North Carolina's substantive law governs this dispute. [*see* DE-9 at 6; DE-21 at 3]

5

Defendant was obligated to cover; and (3) Defendant breached the insurance policies by denying Plaintiffs' claims thereunder seeking such coverage. [DE-1-3 ¶¶ 23–49]

Defendant's principal argument is that Plaintiffs have failed to plausibly allege that EO 120 implicated the Communicable Disease Provision, which reads in relevant part as follows:

> You may extend this insurance to apply to the actual loss of Business Income or Extra Expense that you sustain as the result of your "operations" being temporarily shut down or suspended as ordered by a local, state, or federal board of health or similar governmental board that has jurisdiction over your "operations". The shutdown or suspension must be due to an outbreak of a "communicable disease" or a "waterborne pathogen" at the insured premises as described in the Declarations.
>
> . . .
>
> The coverage for Business Income and Extra Expense will begin 24 hours after the jurisdictional board shuts down or suspends your "operations" and will end within 30 days after the jurisdictional body certifies that the described premises are habitable and that you may fully or partially resume your "operations".

[DE-1-3 Exhibit G at 8] The North Carolina Supreme Court has said that, "[a]s in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). A plain reading of the provision makes clear that the Communicable Disease Provision was intended to cover certain losses resulting from: (1) a temporary suspension of certain business operations that was (2) properly ordered by a governmental board (3) due to the presence of certain diseases or pathogens at the insured premises.

Plaintiffs fail to plausibly allege that the Communicable Disease Provision was implicated by their losses. While COVID-19 is a plausibly-alleged communicable disease within the meaning of the Communicable Disease Provision, Plaintiffs do not plausibly allege that COVID-19 was ever present "at the insured premises[.]" As a threshold matter, the relevant "insured premises" are defined "in the Declarations" referred to within the Communicable Disease Provision [DE-1-3 Exhibit G at 8], yet Plaintiffs

6

neither attach the Declarations from their policies nor allege how the Declarations describe those premises. Because the court is left to speculate as to what the "insured premises" actually are, this deficiency alone is fatal to Plaintiffs' claims. *See Twombly*, 550 U.S. at 555–56 (a pleading must "raise a right to relief above the speculative level" to survive a Rule 12(b)(6) motion). And even were the court to infer that the insured premises were the buildings at which Plaintiffs' businesses were operated and those buildings' grounds, *see* PREMISES, Black's Law Dictionary (11th ed. 2019) ("A house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses"); [DE-1-3 Exhibit H at 1 (denial letter addressed to same address as "Loss Location"), the complaint makes no allegation that COVID-19 was present at those premises. Further, EO 120 does not state that COVID-19 was present at any specific place or that it was issued due to the presence of COVID-19 at any specific place. [*see generally* DE-1-3 and Exhibit B] Because the Communicable Disease Provision makes clear that covered losses must result from a suspension of operations that took place "due to an outbreak of [e.g., COVID-19] at the insured premises" [DE-1-3 Exhibit G at 8], Plaintiffs' failure to plausibly allege the presence of COVID-19 at any specific place is fatal to the complaint.

Seeking to avoid this result, Plaintiffs argue that there had been an outbreak of COVID-19 *everywhere* when EO 120 was issued. EO 120 mentions that the World Health Organization had previously "declared COVID-19 a global pandemic"; that the President of the United States had "declared the ongoing COVID-19 outbreak a pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia"; that the North Carolina Department of Health and Human Services had "confirmed the number of cases of COVID-19 in North Carolina continues to rise"; and that "the area subject to the COVID-19 emergency is statewide[.]" [DE-1-3 Exhibit B at 1–2] Plaintiffs focus upon the "statewide" language in arguing that EO 120 was issued due to an outbreak of COVID-19 in every specific place within the State of North Carolina, where Plaintiffs' businesses are

7

located. [*see* DE-21 at 9 (arguing "the overall outbreak of COVID-19 and the need to implement statewide measures to quell the spread of the outbreak" as the geneses of EO 120)] Plaintiffs argue that the insurance policies did not define either what "outbreak" means or in what circumstance an outbreak should be deemed to have taken place "at the insured premises[,]" and argues that this creates ambiguity that must be construed in favor of coverage. [DE-21 at 4–7]

The North Carolina Court of Appeals has said:

> [An insurance] policy is subject to judicial construction only where the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation. In such cases, the policy must be construed in favor of coverage and against the insurer; however, if the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written. Ambiguity in the terms of the policy is not established simply because the parties contend for differing meanings to be given to the language. Non-technical words are to be given their meaning in ordinary speech unless it is clear that the parties intended the words to have a specific technical meaning.

*N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 138 N.C. App. 530, 532–33, 530 S.E.2d 93, 95 (2000) (internal citations omitted). While Plaintiffs ably argue their position, the court disagrees that the Communicable Disease Provision is ambiguous and reasonably susceptible to the interpretation that Plaintiffs suggest. First of all, political territories like those referenced within EO 120 are not reasonably understood to be "premises[.]" *See* PREMISES, Black's Law Dictionary (11th ed. 2019) ("A house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses"). Second, Plaintiffs' suggested interpretation—that EO 120 was issued due to a COVID-19 outbreak at Plaintiffs' premises specifically because the disease was present within the state generally—is not reasonable, as such an interpretation would impermissibly render "at the insured premises" entirely meaningless. *See Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978) ("The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect."); *Nelson v. Rhem*, 179 N.C. 303, 304, 102 S.E. 395, 396 (1920) (courts cannot "assume that the parties have

8

inserted meaningless terms in their agreement"). And finally, the court's independent research indicates that other courts construing similar provisions have rejected arguments that COVID-19's ubiquity is sufficient to implicate them. *See*, *e.g.*, *Girls v. Phila. Indem. Ins. Co.*, No. 2:20-cv-2035, 2021 U.S. Dist. LEXIS 42489, at *23–25 (S.D. Ohio Mar. 8, 2021) (dismissing claim for breach of virtually-identical provision because "[t]hese provisions contemplate an outbreak of communicable disease on the insured's premises, not an outbreak affecting the public at large[,]" and "[n]owhere in the [complaint] do Plaintiffs allege that COVID-19 was actually present in or on its premises, or that anyone on premises was actually infected with COVID-19").

Plaintiffs' argument regarding the Communicable Disease Provision accordingly fails, and the court concludes that the complaint fails to plausibly allege that Defendant breached the insurance policies by denying Plaintiffs' claims thereunder.

### IV. Conclusion

For the foregoing reasons, Defendant's motion is GRANTED and the complaint is DISMISSED.

SO ORDERED this the 13th day of April, 2021.

Richard E Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE